# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| V. | * | Crim. No. BEL 09-0459 |
| | * | |
| ERIC GRIFFIN | * | |

*****o0o*****

## GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Now comes the United States of America by its attorneys, Rod J. Rosenstein, United States Attorney, and Philip S. Jackson, Assistant United States Attorney, and in response to the Defendant's Motions to Suppress Evidence submits the following Memorandum of Law.

## I. FACTS & CIRCUMSTANCES

The Defendant, Eric Griffin (Griffin), is charged in the instant matter in a two count indictment with a) possession with intent to distribute heroin and 50 grams or more of crack cocaine, and b) possession of a firearm by a convicted felon. That indictment is based in part on the following facts.

Beginning during March, 2009, Baltimore Police Department officers received information from a confidential informant (CI) they considered reliable that an individual the CI knew as "Mush" was trafficking large amounts of heroin in the Baltimore metropolitan area. The CI identified a photograph of Eric Griffin (Griffin) as the individual he/she knew as "Mush".

When the police checked Maryland Motor Vehicle Administration records, they found that Griffin's driving privileges were suspended; an arrestable offense in Maryland per Section 26-202(a)(3)(iv) of Maryland's Transportation Article.[1]

Based on that information, the police began keeping Griffin under surveillance, and ascertained that he had some association with a residence in the 1200 block of Kitmore Avenue in

---

[1] A copy of Griffin's driving record showing his suspended driving privilege, is attached hereto as Exhibit A.

Baltimore. At approximately 7:17 p.m. on July 21, 2009, the police observed Griffin drive a gold Buick from that area to the 5400 block of Woodmont Avenue. At that point, the police approached Griffin while he was still in the Buick, and attempted to arrest him. Initially, Griffin attempted to put the Buick into drive, as if to escape, but as he was hemmed-in by police vehicles, the police were able to order Griffin from the car.

Once arrested, Griffin was found in possession of 10 small baggies containing heroin, some marijuana and a little over $1K U.S. currency. All of these items were found in Griffin's pants pockets. Griffin was then apprised of his *Miranda* rights[2], which he freely and voluntarily waived. A photograph of a police detective reading the litany of those rights to Griffin is attached hereto as Exhibit B. In response to police questioning, Griffin gave a false version of activities he had undertaken immediately prior to traffic stop; i.e. he denied any knowledge of/involvement with a residence located on Kitmore Avenue.

The police then transported Griffin toward the Kitmore Avenue residence. While en route, Griffin attempted to escape from the police car. Notwithstanding his averment to the contrary, keys found on Griffin's person opened the front door to the residence located at 1264 Kitmore Avenue, at which point the police secured the residence and sought/obtained a search warrant targeting that residence. A copy of that warrant is attached hereto as Exhibit C.

In executing that warrant, the police recovered, among other things, paperwork in the Defendant's name, a digital scale, just under 100 grams of crack cocaine, over 400 grams of marijuana, a loaded .38 Special handgun, some loose 9 millimeter ammunition, and other items commonly used to package controlled substances for further distribution.

The Defendant has timely filed a motions to a) suppress physical evidence seized as the result of the described searches, and b) suppress evidence of his custodial statement. It is to those motions that this response is made.

## II. ANALYSIS & ARGUMENT

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## A. Search Incident To Arrest

As outlined above, as the Defendant was operating a motor vehicle, he was effectively hemmed-in by police vehicles, and then taken from his car and warrantlessly searched.

The United States Constitution's Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const., amend. IV. Warrantless searches "are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *United States v. Bush*, 404 F.3d 263, 275 (4th Cir.2005) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390). One of the well-recognized exceptions to the warrant requirement is a search made incident to a lawful arrest. See *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006). Pursuant to this exception, following a lawful arrest law enforcement officers may search "the arrestee's person and the area 'within his immediate control.' " *Id*. (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

A warrantless arrest may be effected by law enforcement officers based upon their on-the-scene assessment that there is probable cause for arresting a person suspected of a crime. *Gerstein v. Pugh*, 420 U.S. 103, 113-114 (1975). The Supreme Court has found probable cause to exist where at the moment of arrest, law enforcement officers had within their knowledge facts and circumstances sufficient to warrant a prudent man in believing a crime had been, or was being committed. See *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

In this matter, the police had observed Griffin operating a motor vehicle at a time when they knew his driving privileges had been suspended.[3] There was therefore probable cause to arrest Griffin for that violation, and accordingly the police could then warrantlessly search his person incident to that lawful arrest.

While in *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710 (2009) the Supreme Court has recently articulated a somewhat more restrictive rule concerning the scope of the search of a vehicle's interior

---

[3] A violation of §16-303(c) of Maryland's Transportation Code; which reads in pertinent part, "A person may not drive a motor vehicle on any highway ... while the person's license or privilege is suspended in this State."

incident to an occupant's arrest, that decision in no way negatively impacts the legality of the police conduct at issue here in the instant matter. In *Gant*, the defendant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before officers searched his car and found cocaine in a jacket pocket. Holding that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest", *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710, 1723 (2009), the Court concluded that "because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710, 1719 (2009). While it is clear that the Court by its decision in *Gant* was circumscribing law enforcement's ability to lawfully search the *interior* of a motor vehicle incident to the driver's arrest, it is equally clear that it was not disturbing previous precedent that authorized a warrantless search of the *person* of the driver of the vehicle; the scenario which presents itself here. See *United States v. Robinson*, 414 U.S. 218 (1973) (where vehicle driver had been lawfully arrested for driving while his privilege was revoked, heroin found in warrantless search of the driver's clothing being worn by him at the time of arrest was lawfully seized).

Accordingly, in the instant matter, the police acted lawfully in searching the person of the Defendant upon his lawful arrest, and the fruits of that search should not be suppressed.

### B. Search of 1264 Kitmore Avenue

As outlined above, pursuant to a search warrant issued by a Maryland judge, the police entered 1264 Kitmore Avenue in Baltimore and seized certain evidence this Office intends to adduce at trial of this matter. A copy of that warrant is attached hereto as Exhibit C.

In issuing a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.

And the duty of a reviewing court is simply to ensure that the [issuing] magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Put another way, in assessing whether a search warrant was properly issued, a court need only be satisfied that the facts presented to the magistrate judge in applying for a search warrant would have "'warrant[ed] a man of reasonable caution' to believe that evidence of a crime [would] be found" on the premises to be searched. *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam).

A review of the facts recited in the instant search warrant affidavit demonstrates that the issuing magistrate properly found probable cause to issue that warrant. The instant search warrant affidavit outlined the following facts:

>  a. a confidential informant with a track record for imparting accurate information had identified an individual he/she knew as "Mush" as a large scale heroin trafficker (Exhibit C, pp. 7-8);
> 
> b. the confidential informant had identified a photo of Eric Griffin as the individual he/she knew as "Mush" (Exhibit C, pp. 7-8);
> 
> c. Griffin had been previously convicted of two narcotics felonies (Exhibit C, p. 8);
> 
> d. according to Maryland MVA records, Griffin's driving privileges were then currently suspended (Exhibit C, p. 8);
> 
> e. based on their surveillance of Griffin's activities, the police had ascertained that Griffin was using a residence in the 1200 block of Kitmore Avenue in Baltimore (Exhibit C, p. 8);
> 
> f. on July 21, 2009, the police observed Griffin drive a gold Buick from the 1200 block of Kitmore Avenue to the 5400 block of Woodmont Avenue and park, at which point the police approached Griffin's car and attempted to arrest him (Exhibit C, p 9);
> 
> g. after initially putting the Buick into drive, Griffin ultimately complied with the police order that he exit his vehicle (Exhibit C, p. 9);
> 
> h. on his arrest, police searched Griffin's person and recovered from his pants' pockets amounts of heroin and marijuana and roughly $1000 U.S. currency (Exhibit C, p. 9)
> 
> i. after being apprised of and waiving his *Miranda* rights, Griffin indicated that he had just driven from his mother's house on Ramblewood Road, that he knew no one who lived in the 1200 block of Kitmore Avenue , and that he had not been on

> Kitmore Avenue that day; assertions which the police knew to be untrue (Exhibit C, p. 9);
>
> j. notwithstanding his denial of any association with a residence on Kitmore Avenue, a key recovered from Griffin, worked the lock on the residence located at 1264 Kitmore Avenue (Exhibit C, pp. 9-10); and
>
> k. once aware that the police had an interest in his presence at a residence in the 1200 block of Kitmore Avenue, Griffin attempted to escape from police custody (Exhibit C, p. 9).

On those facts, the issuing magistrate could reasonably conclude that Griffin was indeed a narcotics trafficker. Reliable confidential informant information coupled with Griffin's prior criminal convictions and the seizure of controlled substances from his person that very day firmly support that conclusion.

Further, the issuing magistrate could reasonably conclude that the targeted residence contained evidence of Griffin's illegal activities in that regard. Griffin's attempts both physically (by trying to escape) and verbally (by denying any connection with the 1200 block of Kitmore Avenue) to disassociate himself with the targeted residence speak volumes regarding the likelihood that something incriminatory would be found at 1264 Kitmore Avenue. See *United States v. Whitner*, 219 F.3d 289, 298-299 (3rd Cir. 2000) (An arrestee's suspicious and deceptive responses to police questioning leads to a reasonable inference that the suspect was attempting to conceal the existence of the apartment and his association with the apartment, which in turn logically suggests that the suspect was storing some evidence of illegal activity at the apartment which he did not want the agents to discover).

Accordingly, the facts outlined in instant the search warrant affidavit would warrant a man of reasonable caution to believe that evidence of a crime would be found on the premises to be searched, and therefore evidence seized pursuant to that warrant should not be suppressed.

### C. Motion to Suppress Statement - Fifth Amendment

The Defendant has further averred that the statements he made to police were acquired in violation of the Fifth Amendment of the U.S. Constitution. Because at the time of the police

questioning the Defendant was in "custody", the mandate of *Miranda v. Arizona*, 384 U.S. 436 (1965) here applies; i.e. that an accused be apprised of certain rights prior to the instigation by law enforcement officers of any custodial interrogation.

In order to protect rights granted by the Fifth Amendment that "no person ... shall be compelled in any criminal case to be a witness against himself," in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court mandated that certain prophylactic procedural rules must be followed during custodial interrogations. In that regard, the Court mandated that a suspect in custody "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

At the scheduled pre-trial motions hearing, the Government intends to adduce evidence that the requirements of *Miranda* were followed[4], and that therefore the post-arrest statements of the Defendant are admissible evidence.

### III. CONCLUSION

The conduct of the officers in this case was objectively reasonable, and there is no cause to suppress the evidence obtained from the searches challenged by the Defendant or his post-arrest statements. Wherefore, the Defendant's motions to suppress evidence should be denied.

Respectfully Submitted,

Rod J. Rosenstein
United States Attorney

_____
Philip S. Jackson
Asst. United States Attorney

---

[4] Indeed, there is photographic evidence of the apprisal of *Miranda* rights. See attached Exhibit B.

## CERTIFICATION

It is this 20th day of August, 2010, certified that a copy of the foregoing Government's Memorandum of Law in Response to Defendant's Motion to Suppress was this day mailed to Franklin Draper, Attorney for the Defendant, Office of the Public Defender, 100 S. Charles Street, Tower II, Baltimore, MD 21201.

                                                  Philip S. Jackson
                                                  Asst. United States Attorney
                                                  United States Courthouse
                                                  36 S. Charles Street, 4th Floor
                                                  Baltimore, MD   21201
                                                  (410)209-4848

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C