# EXHIBIT A

```
LEGACY RESPONSE           TIME 2138      DATE 072109        PAGE 01

QUERY FORMAT:    CLN/G615234009739.NPY/99

CLN: G-615-234-009-739

NAME: ERIC GRIFFIN                       RACE: 1-BLACK              SEX: M
ADDR: 1220 RAMBLEWOOD RD                   HGT: 5'06"   WGT: 155    DOB: 09-24-79
CITY: BALTIMORE                          COUNTY:           ST: MD   ZIP: 21239-2637

* TOTAL CURRENT POINTS  00

* LICENSE STATUS:  SUSPENDED
* COMMERCIAL DRIVER'S LIC. STATUS:
* SPECIAL ATTENTION *  NONE

* LICENSE DATA
    CLASS      LICENSE     ISSUE       EXPIRE
               TYPE        DATE        DATE       RESTRICTIONS
    ID         D           09-18-08    02-10-11   Z

* SPECIAL RESTRICTIONS
CLASS        CODE DESCRIPTION
NEXT PAGE.        P/N    Y10U                                 BEGIN DATE   END DATE
```

# EXHIBIT B



# EXHIBIT C

CIRCUIT COURT
OR
DISTRICT COURT OF MARYLAND
BALTIMORE CITY/BALTIMORE COUNTY

## APPLICATION FOR SEARCH AND SEIZURE WARRANT

To the Honorable Judge ___Bryant___ of the District/Circuit Court the undersigned being duly sworn deposes and says that he has reason to believe that in the location known as:

**1264 Kitmore Road a two story townhouse with a maroon front door and the numbers 1264 on the residence**

in Baltimore City, there is now being concealed certain property, namely; **See attachment Exhibit A;**

which is in violation of the Laws of Maryland pertaining to Title 5 Sections CR 5-101 through CR 5-1101 and Title 7-104 of the Criminal Code of Maryland, and I am satisfied that there is probable cause to believe that the property so described is being concealed in the location above described and that the foregoing grounds for application for issuance of the search warrant exist.

And that the facts tending to establish grounds for issuance of Search Warrant are set forth in the Affidavit attached thereto and made a part thereof

WHEREFORE your Affiants pray that a Search and Seizure Warrant be issued for said location.

_____          _____
AFFIANT                                         AFFIANT

SWORN to before me and subscribed to in my presence dated this ___21___ of July, 2009.

_____
JUDGE

CIRCUIT COURT
OR
DISTRICT COURT OF MARYLAND
BALTIMORE CITY/BALTIMORE COUNTY

## SEARCH AND SEIZURE WARRANT

To: Any Police Officer of Baltimore City:

Affidavit having been made before me by Detective Keith Gladstone and Detective Ivo Louvado, said Affidavit being incorporated by reference into warrant and made a part thereof, that he has reason to believe that at the location described as: **1264 Kitmore Road a two story townhouse with a maroon front door and the numbers 1264 on the residence** in Baltimore City, there is now being concealed certain property, namely; **See attachment Exhibit A;** Which is in violation of the Laws of Maryland pertaining to Title 5 Sections CR 5-101 through CR 5-1101 and Title 7-104 of the Criminal Code of Maryland, and I am satisfied that there is probable cause to believe that the property so described is being concealed in the location above described and that the foregoing grounds for application for issuance of the search warrant exist.

You are therefore commanded, with the necessary and proper assistants, to search forthwith the location herein above described for the property specified, executing this warrant and making the search; and if the property be found there, to seize it; and if upon execution of this warrant, there are found persons then and there engaged in the commission of a crime, arrest those so participating; leaving a copy of this warrant and inventory of the property seized and returning copy of said warrant and inventory, if any, to me within ten days after execution of this warrant; or, if not served, to return this warrant to me promptly, but not later than five days after this expiration, as required by law.

Dated this 21st of July, 2009.

Signed

_____
JUDGE

# AFFIDAVIT

## I. Purpose of the Affidavit

This Affidavit is submitted in support of a search and seizure warrant pertaining to violations of the Controlled Dangerous Substance laws, Criminal Code CR 5-101 through CR 5-1101 of the Criminal Law Article of Maryland. Because this Affidavit is being submitted for this limited purpose, your Affiant has not included every detail of the investigation that has been conducted to date. Rather, your Affiant has set forth only those facts that your Affiant believes are necessary to establish probable cause. Your Affiant has not, however, excluded any information known to your Affiant that would defeat a determination of probable cause. The information contained in this Affidavit is based upon your Affiant's personal knowledge, a review of documents and other evidence, and conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

## II. Premises to be Searched

1264 Kitmore Road Baltimore Maryland

## III. Affiant Keith Gladstone

Your Affiant, Keith Gladstone, has been a sworn officer of the Baltimore Police Department since November 1992 and is currently assigned to the Organized Crime Division. Your Affiant successfully completed a six-month basic course of training that included classes pertaining to Controlled Dangerous Substances (CDS). Your Affiant has also attended more than five advanced investigative courses. Prior assignments include uniform patrol, and District Operations Unit. Your Affiant has personally conducted and participated in numerous investigations involving criminal activity including but not limited to CDS, violent crime, and firearms violations. Your Affiant has participated in the arrest of approximately 1000 persons for CDS, violent crime, and/or firearms violations and has authored and/or executed more than 400 Search and Seizure Warrants relating to CDS, violent crime, and/or firearms violations.

(3)

Through training and interviews of hundreds of persons arrested for CDS offenses, your Affiant is familiar with the actions, traits, habits, and terminology utilized by traffickers of CDS. Your Affiant has also participated in hundreds of surveillances of suspected drug traffickers. Based upon your Affiant's training, experience and participation in other investigations involving illegal CDS, your Affiant knows the following:

a) That drug traffickers often place communications devices, vehicles and other assets in names other than their own to avoid detection of these items by law enforcement officials;

b) That even though these items are in another entity or person's name, the drug dealers actually own and continue to use these devices and assets and to exercise dominion and control over them;

c) That drug traffickers maintain on hand amounts of U.S. currency in order to maintain and finance their ongoing drug business;

d) That drug traffickers maintain books, records, receipts, notes, ledgers, transportation tickets and other travel records, money orders, and other papers relating to the transportation, ordering, sale, and distribution of CDS and the profits derived from those transactions, and maintain these items where they have ready access to them, such as in their residence, place of business, safety deposit boxes, or storage lockers;

e) That drug traffickers commonly "front" (provide on consignment) CDS to their clients and keep records of these transactions;

f) That it is common for drug traffickers to secrete illegal drugs and other contraband, records of drug transactions, amounts of currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds of drug transactions and evidence of financial transactions in secure locations within their residence and place of business, including in combination or key-lock safes or strong boxes, suitcases, locked cabinets and other types of locked or closed containers, hidden compartments, safety deposit boxes, and storage lockers for ready access and to conceal them from law enforcement authorities;

g) That when drug traffickers amass proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits; that to accomplish this goal, drug



traffickers utilize domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts, and that drug traffickers commonly keep records of these transactions in their residence, place of business, safety deposit boxes, and storage lockers;

h) That drug traffickers commonly maintain addresses and telephone numbers in books or papers which reflect names, addresses, and telephone numbers of their drug-trafficking associates; and that they commonly use and carry cellular telephones, pagers and/or personal digital assistants that store names, addresses, telephone numbers, and codes of co-conspirators;

i) That drug traffickers commonly take or cause to be taken photographs and videos of themselves, their associates, their property and/or assets, and their drugs; that these traffickers usually maintain these photographs and videos in their possession in their residence, place of business, or in storage lockers;

j) That it is also common for drug traffickers to use vehicles to move quantities of drugs and currency to other locations for storage and further distribution and use; and

k) That drug traffickers often rent vehicles instead of using their own to prevent their own vehicles from being seized by law enforcement officials.

## Affiant Ivo Louvado

Your Affiant, Ivo Louvado, has been a sworn officer of the Baltimore Police Department since November 1999 and is currently assigned to the Violent Crime Impact Division. Your Affiant successfully completed a six-month basic course of training that included classes pertaining to Controlled Dangerous Substances (CDS). Your Affiant has also attended more than five advanced investigative courses. Prior assignments include uniform patrol and District Operations Unit. Your Affiant has personally conducted and participated in numerous investigations involving criminal activity including but not limited to CDS, violent crime, and firearms violations. Your Affiant has participated in the arrest of approximately 1000 persons for CDS, violent crime, and/or firearms violations and has authored and/or executed more than 200 Search and Seizure Warrants relating to CDS, violent crime, and/or firearms violations

(5)

Through training and interviews of hundreds of persons arrested for CDS offenses, your Affiant is familiar with the actions, traits, habits, and terminology utilized by traffickers of CDS. Your Affiant has also participated in hundreds of surveillances of suspected drug traffickers. Based upon your Affiant's training, experience and participation in other investigations involving illegal CDS, your Affiant knows the following:

a) That drug traffickers often place communications devices, vehicles and other assets in names other than their own to avoid detection of these items by law enforcement officials;

b) That even though these items are in another entity or person's name, the drug dealers actually own and continue to use these devices and assets and to exercise dominion and control over them;

c) That drug traffickers maintain on hand amounts of U.S. currency in order to maintain and finance their ongoing drug business;

d) That drug traffickers maintain books, records, receipts, notes, ledgers, transportation tickets and other travel records, money orders, and other papers relating to the transportation, ordering, sale, and distribution of CDS and the profits derived from those transactions, and maintain these items where they have ready access to them, such as in their residence, place of business, safety deposit boxes, or storage lockers;

e) That drug traffickers commonly "front" (provide on consignment) CDS to their clients and keep records of these transactions;

f) That it is common for drug traffickers to secrete illegal drugs and other contraband, records of drug transactions, amounts of currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds of drug transactions and evidence of financial transactions in secure locations within their residence and place of business, including in combination or key-lock safes or strong boxes, suitcases, locked cabinets and other types of locked or closed containers, hidden compartments, safety deposit boxes, and storage lockers for ready access and to conceal them from law enforcement authorities;

g) That when drug traffickers amass proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits; that to accomplish this goal, drug



traffickers utilize domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts, and that drug traffickers commonly keep records of these transactions in their residence, place of business, safety deposit boxes, and storage lockers;

h) That drug traffickers commonly maintain addresses and telephone numbers in books or papers which reflect names, addresses, and telephone numbers of their drug-trafficking associates; and that they commonly use and carry cellular telephones, pagers and/or personal digital assistants that store names, addresses, telephone numbers, and codes of co-conspirators;

i) That drug traffickers commonly take or cause to be taken photographs and videos of themselves, their associates, their property and/or assets, and their drugs; that these traffickers usually maintain these photographs and videos in their possession in their residence, place of business, or in storage lockers;

j) That it is also common for drug traffickers to use vehicles to move quantities of drugs and currency to other locations for storage and further distribution and use; and

k) That drug traffickers often rent vehicles instead of using their own to prevent their own vehicles from being seized by law enforcement officials.

## IV.   Probable Cause

The following facts are either known to your Affiant through personal observation or have been obtained through reliable confidential sources, law enforcement reports and/or directly from other law enforcement officers.

**Confidential Informant Information**

During the month of March – July 2009 your affiants were contacted by a confidential and reliable informant in reference to illegal heroin trafficking in Baltimore City. This informant hereafter referred to as CI-1 related information about a male who sold large quantities of heroin. This individual is known to CI-1 as "MUSH". CI-1 described "MUSH" as a black male, approximately 5'5" tall, and approximately 30 years.

Your affiant believed "MUSH" to be Eric Griffin M B, 9/24/1979. Your affiant obtained an arrest photo of Eric Griffin SID # 1722835. This photo was shown to

CI-1. CI-1 related that this photo was the individual "MUSH" who sold heroin.

CI-1 has given information in the past which has led to the seizure of over 500 grams of powder cocaine and 500 grams of heroin. CS has given information in reference to narcotic traffickers that your affiants know to be accurate. As a result of these seizures individuals have been arrested and convicted for felony CDS violations. CS is considered very reliable.

## Criminal Record Inquiry

A criminal record inquiry was conducted on Eric Griffin SID# 1722835. Griffin has an extensive criminal record. Griffin has a distribution of CDS conviction on 11/5/2003, possession with intent to distribute CDS conviction that occurred on 10/4/2000, Attempted Murder conviction on 9/13/1996 and a Handgun Violation conviction on 7/3/1996. Copy of inquiry attached.

## MVA Inquiry

An inquiry with the MVA was conducted on Eric Griffin M/B 09/24/1979. Griffin soundex G-615-234-009-739 has a Maryland ID. Griffin's privilege to drive in Maryland is currently suspended. Copy of inquiry is attached.

## Observations of Eric Griffin on 7-21-2009

Previously you affiants were able to ascertain that Eric Griffin was utilizing an unknown residence in the 1200 block of Kitmore Avenue. This information was obtained through physical surveillance.

On July 21, 2009 members of the Baltimore Police Department set up surveillance in the 1200 block of Kitmore Avenue. Griffin was observed on several occasions to be to enter and exit a Gold Buick Maryland registration 6EJS58 from an

8

unknown apartment in the block.

On July 21, 2009 at approximately 7:17 pm Griffin entered the gold Buick Maryland registration 6EJS58. Griffin then drove to the 5400 block of Woodmont Avenue and parked. At approximately 7:20 pm members of the Baltimore Police Department approached Griffin's Buick in unmarked vehicles to arrest him for driving on a suspended driver's privilege. Upon exiting our vehicles with badges and identification displayed, Griffin attempted to place the Buick into drive. At this point Griffin was ordered out of the vehicle at gunpoint as his vehicle was blocked in.

Search incident to arrest Detective Louvado recovered one plastic bag containing (10) small plastic bags each containing approximately one gram of powder substance (suspected raw heroin) from his right front pants pocket. Recovered from Griffins left front pants pocket was (1) plastic bag containing plant material (suspected marijuana). Also recovered from his left pocket was $1015.00 US Currency.

Griffin was advised of his rights per *Miranda vs. Arizona* by Detective Paul Geare. Griffin related that he understood his rights and would answer questions. Griffin related that he lived at 1220 Ramblewood Road with his mother. Griffin related that he had just driven from 1220 Ramblewood Road to 5400 Woodmont Avenue. Your affiants know this to be incorrect. Griffin was asked if he knew anyone in the 1200 block of Kitmore Avenue. Griffin related that he did not know anyone in the block and had not been in that block today. Griffin denied having a key to any residence at that location. Griffin was advised that detectives would take keys recovered from the vehicle to see if they activate any locks to residence. At this point Griffin stopped talking to detectives.

Members of the Baltimore Police then drove to the 1200 block of Kitmore Avenue with Griffin's keys as Griffin was detained in the 5400 block of Woodmont Avenue. While in route to the location Griffin told detectives Geare and Rivera that he could not understand why officers would try to associate him with any apartment in the 1200 block of Kitmore. Griffin then advised detective that he had two large pit bulls located in the residence. Griffin, who was handcuffed and seat belted in the rear passengers side of Detectives Geare vehicle, then unbuckled his seatbelt, moved to drivers side of the backseat, opened the back door and attempted to run from the vehicle. Griffin was immediately stopped and restrained after a brief struggle.

9

Detectives placed Griffins keys into the lock of 1264 Kitmore Road. These keys activated the locks to the front door of the residence to 1264 Kitmore Road. At this point the residence was secured.

Recovered from the front seat of the Buick was a receipt for payment for a storage locker in the name of Eric Griffin at 1220 Ramblewood Road, Baltimore, Maryland 21239 date current as 6/8/2009. This storage locker was located at 7304 McClean Blvd Storage locker # 3603. Detectives went to the unit. Copy of receipt attached.

A Baltimore Police Department canine unit was summonsed to 7304 McClean Blvd Storage locker # 3603. Canine Officer Stenger and Canine Unit 2544 "Bonnie" arrived at the location. Canine Unit 2544 is certified to detect the olfactory presence of narcotics in the state of Maryland. An exterior scan of the unit was conducted. Canine unit 2544 detected the presence of narcotics emitting from the door to the storage unit on 7/21/2009 at 11:05 pm. Your affiants know that CDS distributors frequently utilize storage units to conceal additional quantities of CDS, weapons, assets.

## V. Conclusion

Based on the foregoing, it is respectfully submitted that there is probable cause to believe that Eric Griffin and others are participating in a conspiracy to distribute controlled dangerous substances, in violation of the Controlled Dangerous Substance laws, Criminal Code CR 5-101 through CR 5-1101 of the Criminal Law Article of Maryland; that the premises at **1264 Kitmore Road, Baltimore Maryland 21239** and is being used for the storage and distribution of narcotics, narcotics proceeds, and the facilitation of narcotics offenses; and that there will be found at **1264 Kitmore Road,**

10

**Baltimore Maryland 21239** and items which constitute evidence, fruits, and instrumentalities of the aforementioned violations of the Controlled Dangerous Substance laws.

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the vehicles as described above and the premises of **1264 Kitmore Road, Baltimore Maryland 21239** and and authorize the search and seizure of the items described in Attachment A hereto.

_____
Keith Gladstone
Detective
Baltimore Police Department

_____
Ivo Louvado
Detective
Baltimore Police Department

Subscribed to and sworn to before me on 21st of July 2009.

_____
Judge

## Attachment A

### Items to be Seized

a) Controlled dangerous substances (CDS) and books, records, receipts, notes, ledgers, money orders, and other papers relation to the transportation, ordering, sale, and distribution of CDS and the profits derived from those transactions;

b) Papers, airline tickets, passports, notes, schedules, receipts, and other items relating to domestic or foreign travel;

c) United States currency, foreign currency, precious metals, jewelry, financial instruments including but not limited to, stocks and bonds.

d) Books or papers which reflect names, addresses, and/or telephone numbers of co-conspirators involved in drug trafficking;

e) Paraphernalia for packaging, cutting, weighing, importing and distributing CDS including, but not limited to, scales, packaging materials, and other chemical agents used to mix with CDS;

f) Indicia of occupancy, residency, ownership or lease of the residence identified on the warrant, including but not limited to utility and telephone bills, other mail, and keys;

g) Any Firearms, ammunition and/or paraphernalia including, but not limited to, magazines, holsters, and gun boxes.

h) Cellular telephones, pagers, and personal digital assistants and any names, addresses, telephone numbers, and codes stored therein.

i) Photographs, in particular, photographs of co-conspirators, of assets, and/or of controlled substances, in particular Marijuana, Heroin and Cocaine.

j) Any and all electronic devices capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include but are not limited to computers, computer components, computer related electronic devices, computer software, computer data, computer hardware, and manuals which provide instructions concerning the operation of a computer system, computer software, and /or related device